**Daniel Joe MLADENKA, Appellant,**

v.

**Judy–Anne MLADENKA, Appellee.**

**No. 14–02–01146–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

March 4, 2004.

Christopher M. Cammack, Houston, for appellant.

C. Henry Kollenberg, Michael L. Laviage, and Douglas M. McIntyre, Houston, for appellee.

Panel consists of Justices EDELMAN, FROST, and CHARLES W. SEYMORE.

## OPINION

CHARLES W. SEYMORE, Justice.

In this post-judgment enforcement action, appellant, Daniel Joe Mladenka ("Daniel"), appeals the trial court's judgment setting aside a real property conveyance as a fraudulent transfer and the issuance of a writ of execution against the real property in satisfaction of a judgment in favor of appellee, Judy–Anne Mladenka ("Judy–Anne"). We affirm.

### I. FACTS AND PROCEDURAL BACKGROUND

The parties were divorced by final decree dated March 4, 1997. In the decree, Judy–Anne was awarded a money judgment for $83,728.82 and $17,074.50 in attorney's fees, together with post-judgment interest at the rate of 10% per annum.[1]

On March 19, 1997, by Special Warranty Deed, Daniel conveyed to his brother, Robert Mladenka ("Robert"), all of his interest in his nonexempt real property located at 5516 Grand Lake, Houston. Judy–Anne filed suit requesting that conveyance of the Grand Lake house be set aside as a fraudulent transfer. After a bench trial, the court issued its final judgment, finding that Daniel's conveyance of the Grand Lake house was done with "actual intent to hinder, delay, and defraud" Judy–Anne. The court issued an order setting aside the conveyance. Under the court's order, Judy–Anne had authority to attach and sell the property. The court issued Findings of Fact and Conclusions of Law.

In two issues, Daniel challenges the judgment arguing that: (1) Judy–Anne's fraudulent transfer cause of action was barred by limitations under the Texas Uniform Fraudulent Transfer Act[2] ("TUFTA"); and (2) there is legally and factually insufficient evidence to support the trial court's finding of a fraudulent transfer.

### II. STANDING

■ As an initial matter, we address Judy–Anne's motion to dismiss. In her motion, Judy–Anne argues that Daniel lacks standing to bring the appeal because Daniel affirmatively claimed in the trial court that he had no interest in the property and the judgment merely allows her to execute against property owned by Robert; therefore, Daniel is unaffected by the judgment and lacks standing.

■ Standing is prerequisite to subject-matter jurisdiction, and subject-matter jurisdiction is essential to a court's power to decide a case. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex. 2000). Subject matter jurisdiction is the power of a court to hear and determine cases of a general class to which the case in question belongs. *Cedar Crest Funeral Home, Inc. v. Lashley*, 889 S.W.2d 325, 330 (Tex.App.-Dallas 1993, no writ). Once a court acquires subject matter jurisdiction, it has power to dispose of every issue in the case. *Id.* at 330–31.

Here, Judy–Anne brought suit against both Daniel and Robert, seeking relief under TUFTA. In its judgment, the court ordered that conveyance of the real property from Daniel to Robert be set aside,[3] and decreed that "Daniel Joe Mladenka is the true owner" of the property.

■ In a fraudulent conveyance case between the judgment creditor, transferor, ·

---

1. At the time of trial, May 2002, Daniel had not made any payments on the judgment.

2. TEX. BUS. & COM.CODE ANN. §§ 24.001–.012 (Vernon 2002).

3. Daniel filed a notice of appeal in this case. Robert, although adversely impacted by the judgment, did not file a notice of appeal.

and transferee, title to the subject property is necessarily in issue because the basis of the suit is the allegation that transfer of title was a sham. *See Tex. Sand Co. v. Shield,* 381 S.W.2d 48, 54 (Tex.1964). When conveyance of property is found to be fraudulent, Texas courts have concluded that legal, as well as equitable title, remains with the debtor relative to a defrauded creditor. *E.g., id.; Eckert v. Wendel,* 120 Tex. 618, 40 S.W.2d 796, 797 (1931) (noting that as to a defrauded creditor, the fraudulent conveyance is void); *see also United States v. Chapman,* 756 F.2d 1237, 1240 (5th Cir.1985) (construing Texas law, noting that conveyances found to be fraudulent are null and void as to the defrauded creditors; legal and equitable title remain with debtor); *In re MortgageAmerica Corp.,* 714 F.2d 1266, 1275 (5th Cir.1983) (noting that an action under TUFTA is "one for property that properly belongs to the debtor" and an equitable interest in the property remains with the debtor); 17 Tex. Jur.3d *Creditors' Rights & Remedies* § 635 (1995) (noting that when a fraudulent transfer is set aside, cancellation restores to the creditor and the transferor only rights they had against each other prior to the fraudulent transfer).[4]

The trial court found transfer of the Grand Lake house was fraudulent relative to Judy–Anne's rights as a judgment creditor. Because Daniel had an interest in the property subsequent to the court's judgment, we conclude he has standing to challenge the judgment. In addition, Daniel is directly impacted because he is named as the "true owner" of the property and

should be permitted to challenge the court's judgment. *See* 4 C.J.S. *Appeal & Error* § 156 (1995) (stating that generally one who is injured by a judgment or who may benefit from its reversal, may appeal the judgment).

In support for her standing argument, Judy–Anne cites several cases which stand for the proposition that on appeal a party may not complain of a court's actions that do not adversely affect him or that merely affect the rights of others. *See, e.g., Robinson v. Budget Rent–A–Car Sys., Inc.,* 51 S.W.3d 425, 434 (Tex.App.-Houston [1st Dist.] 2001, pet. denied) (involving tax provision, and finding appellant could not assert error based upon order entered against a non-appealing party); *Tacon Mech. Contractors v. Grant Sheet Metal, Inc.,* 889 S.W.2d 666, 672 (Tex.App.-Houston [14th Dist.] 1994, writ denied) (involving contract claims, court held appellant could not complain about award of damages against non-appealing sureties). In those cases, petitioners asserted error regarding a court's award or order specifically pertaining to a non-appealing party; however, none involve fraudulent transfer of property. They are inapposite to the present case. Daniel was named in the judgment as the "true owner" of the property. He is seeking a take-nothing judgment in his favor in addition to restoration of the property to Robert.[5]

Finally, other jurisdictions, in construing their uniform fraudulent transfer statutes, have concluded that debtors, as parties to underlying proceedings, are also parties to the judgment and may challenge the judgment.[6] *See, e.g., In re Marriage of Huth,*

---

**4.** Although in a different context, the Texas Supreme Court has found that third parties who have an interest (equitable or legal) which will be affected by disposition of property, have standing to challenge the sale to the extent their rights will be affected. *See Goswami v. Metro. Sav. & Loan Ass'n,* 751 S.W.2d

487, 489 (Tex.1988) (discussing a third party's rights relative to a foreclosure sale).

**5.** We make no decision regarding Robert's right to this relief.

**6.** *See* Tex. Bus. & Com.Code Ann. § 24.012 ("This chapter shall be applied and construed

437 N.E.2d 1042, 1047 (Ind.Ct.App.1982) (noting that under Indiana statutes, all conveyances of property with intent to defraud creditors are void; court found debtor was "before the trial court, litigated the matter, and is bound by the judgment"); *see also Comjean v. Cruickshank*, 191 B.R. 504, 506–07 (D.Mass.1995) (finding that debtors may not have standing under the "aggrieved persons" rule;[7] however, if the debtor is named as a party-defendant in an underlying bankruptcy proceeding, barring his appeal would "have the effect of depriving a named party, who fully participated in defending the case below, an opportunity to appeal from an adverse judgment.").

We conclude Daniel has standing to bring this appeal because (1) he was a party during trial; (2) he was named in the final judgment; and (3) he retained an interest in the property relative to Judy–Anne's claims. We deny Judy–Anne's motion to dismiss and consider the issues presented by Daniel's appeal.

## III. THE FRAUDULENT TRANSFER

In his first issue, Daniel challenges the trial court's conclusion of law that Judy–Anne's cause of action was not barred by limitations. In his second issue, Daniel challenges the legal and factual sufficiency of the evidence to support the trial court's findings and conclusions that: (1) the conveyance to Robert was accomplished with actual intent to hinder, delay, and defraud Judy–Anne; and (2) the conveyance was accomplished without receipt of "reasonably equivalent value."

to effectuate its general purpose to make uniform the law with respect to the subject of this chapter among states enacting it.").

## A. Standard of Review

We review the trial court's findings of fact for legal and factual sufficiency of the evidence by the same standards we apply in reviewing the evidence supporting a jury's finding. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994); *Material P'ships, Inc. v. Ventura*, 102 S.W.3d 252, 257 (Tex.App.-Houston [14th Dist.] 2003, pet. denied). When the appellate record contains a reporter's record as it does here, findings of fact are not conclusive on appeal if the contrary is established as a matter of law or if there is no evidence to support the findings. *Ventura*, 102 S.W.3d at 257. In reviewing a no-evidence point, we consider only the evidence and inferences that tend to support the finding, disregarding all evidence and inferences to the contrary. *Eller Media Co. v. City of Houston*, 101 S.W.3d 668, 674 (Tex.App.-Houston [1st Dist.] 2003, pet. denied). If there is any evidence of probative force to support the finding, in other words, more than a mere scintilla, we will overrule the issue. *Id.* In reviewing a factual sufficiency point, we weigh all of the evidence in the record and will overturn the court's findings only if they are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). Should we overturn the finding, we must clearly state why the finding is factually insufficient. *Id.*

A trial court's conclusions of law are always reviewable on appeal. *In re W.D.H.*, 43 S.W.3d 30, 33 n. 4 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). We review conclusions of law de novo to determine whether they are correct.

7. Under the "aggrieved persons" rule, only those persons whose rights or interests are "directly and adversely affected pecuniarily" by a bankruptcy court order may appeal the order. *Comjean*, 191 B.R. at 506.

*Martin–Simon v. Womack,* 68 S.W.3d 793, 796 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). Conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Id.* Thus, incorrect conclusions of law do not require reversal if the controlling findings of fact support the judgment under a correct legal theory. *Id.*

### B. Limitations

■ The trial court stated in its conclusions, "[t]his action was brought timely, and was not extinguished by any provision of 24.010 Tex. Bus. and Comm. Code."[8] Daniel claims this is in error because the action brought by Judy–Anne was one "on behalf of a spouse" and therefore, under section 24.010(b) of TUFTA, Judy–Anne was required to bring the action within two years after the action accrued or, within one year after the transfer was discovered. *See* TEX. BUS. & COM.CODE ANN. § 24.010(b).

■ A party defending on limitations bears the burden of proof and must establish the applicability of the limitations statute, and present evidence regarding the date the opponent's cause of action accrued. *In re Hinsley,* 201 F.3d 638, 644–45 (5th Cir.2000) (construing Texas law). Section 24.010 provides:

(a) Except as provided by Subsection (b) of this section, a cause of action with respect to a fraudulent transfer or obligation under this chapter is extinguished unless action is brought:

(1) under Section 24.005(a)(1) of this code, within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant;

\* \* \* \*

(b) A cause of action on behalf of a spouse, minor, or ward with respect to a fraudulent transfer or obligation under this chapter is extinguished unless the action is brought:

(1) under Section 24.005(a) or 24.006(a) of this code, within two years after the cause of action accrues, or if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant; or

(2) under Section 24.006(b) of this code within one year after the date the transfer was made.

TEX. BUS. & COM.CODE ANN. § 24.010. Judy–Anne moved under section 24.005(a)(1). Thus, if she was not a "spouse" at the time of transfer, or within one year after the transfer was or reasonably could have been discovered, her action is permissible within the four-year limitations period specified in section 24.010(a).

Daniel does not dispute that the parties were divorced at the time he conveyed the Grand Lake house to Robert. Thus, the crux of Daniel's argument is that the term "spouse" as contained in section 24.010(b) necessarily includes former spouses or ex-spouses.[9] We do not agree.

---

8. The court also stated in its findings of fact that the action was brought within four years from the date the property was conveyed. However, in his brief, Daniel does not contend there is insufficient evidence to support this finding; instead, he contends the error regarding limitations is "one purely of law."

9. During oral argument, Daniel prefaced his contention as a request for this court to "extend" existing law and, for the first time, asserted that Judy–Anne was a "spouse" under TUFTA because her right to the judgment emanated from her status as Daniel's spouse. However, Daniel's debt to Judy–Anne came

A plain reading of the applicable provision of TUFTA does not support Daniel's argument. *See In re N.R.C.*, 94 S.W.3d 799, 805 (Tex.App.-Houston [14th Dist.] 2002, pet. denied) (noting that unambiguous statutes are to be interpreted according to their plain meaning). The term "spouse" is not defined under TUFTA, however, the term is generally defined as "[o]ne's husband or wife." BLACK'S LAW DICTIONARY 1402 (6th ed.1990); *see also* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2208 (1993) (defining spouse as "husband and wife"). In contrast, a "former spouse" or an "ex-spouse" refers to one no longer a part of that marital relationship. *See* BLACK'S LAW DICTIONARY 557 (6th ed.1990) (noting that the prefix "ex" denotes "removal, cessation or former"). Thus, "spouse" refers to one's husband or wife; "ex-spouse" does not. Also, the term "spouse" has been construed under Texas law as referring to one who is legally married. *See, e.g., Weaver v. State*, 855 S.W.2d 116, 120 (Tex.App.-Houston [14th Dist.] 1993, no pet.) (finding the term "spouse" under Rule of Evidence 504 means one legally married to another); *Speir v. Nat'l Mar. Union Pension & Welfare Plan*, 449 S.W.2d 350, 352 (Tex.Civ. App.-Houston [1st Dist.] 1969, writ ref'd n.r.e.); *cf. Johnston v. Crook*, 93 S.W.3d 263, 270 (Tex.App.-Houston [14th Dist.] 2002, pet. denied) (examining fraudulent transfer claim of ex-spouse under four-year period of limitations).

Because Judy–Anne was not Daniel's spouse at the time of the subject transfer or at any time after, her action was governed by the four-year limitations period in section 24.010(a). The transfer to Robert occurred on March 19, 1997, and Judy–Anne filed her cause of action on October 11, 2000. Therefore, Judy–Anne timely filed her suit.[10]

Based on the foregoing, we sustain the trial court's conclusion of law that Judy–Anne timely filed her action and overrule Daniel's first issue.

## C. Sufficiency of the Evidence

In his second issue, Daniel asserts that there was insufficient evidence to support the court's findings of fact and conclusions of law regarding the necessary elements under section 24.005(a).[11] *See* TEX. BUS. & COM.CODE ANN. § 24.005(a).

■ The purpose of TUFTA is to prevent debtors from defrauding creditors by placing assets beyond their reach. *Tel. Equip. Network, Inc. v. TA/Westchase Place, Ltd.*, 80 S.W.3d 601, 607 (Tex.App.-Houston [1st Dist.] 2002, no pet.). Relative to this appeal, a transfer is fraudulent under section 24.005(a) if: (1) the debtor made the transfer with actual intent to hinder, delay, or defraud a creditor; or (2) the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer and the debtor

into existence upon the divorce, when Judy–Anne was no longer Daniel's spouse.

10. Daniel also contends Judy–Anne's claim falls within the limitations period applicable to "insiders" under TUFTA. *See* TEX. BUS. & COM.CODE ANN. §§ 24.006(b), 24.010. However, because we have concluded that Judy–Anne was not a "spouse" for purposes of TUFTA, her cause of action is governed by the limitations period prescribed in section 24.010(a). Also, Judy–Anne is not pursuing recovery under "insider" provisions of the

act. In its judgment, the trial court's conclusion that the transfer was done with intent to defraud, refers to section 24.005(a)(1). Therefore, we do not agree that Judy–Anne was required to file her cause of action within the limitations period applicable to insiders.

11. During oral argument, Daniel's counsel stated that the trial court erred in denying his request for an instructed verdict. However, because Daniel failed to assign error to this issue or brief it on appeal, we do not address it. *See* TEX R.APP. P. 38.1(h).

intended to incur, or reasonably believed he would incur, debts beyond his ability to pay. *See* Tex. Bus. & Com.Code Ann. § 24.005(a). The creditor seeking to set aside a transfer has the burden to establish by a preponderance of the evidence that the conveyance was actuated by fraud. *Johnston v. Mabrey,* 677 S.W.2d 236, 239 (Tex.App.-Corpus Christi 1984, no writ); *Ellis v. Ureste,* 159 S.W.2d 226, 227 (Tex. Civ.App.-San Antonio 1942, writ ref'd w.o.m.).

### 1. Intent to hinder, delay, or defraud

Direct proof of fraud is often unavailable. Therefore, circumstantial evidence may be used to prove fraudulent intent. *See Roland v. United States,* 838 F.2d 1400, 1402–03 (5th Cir.1988). In determining intent under section 24.005(a)(1), the following nonexclusive factors, or "badges of fraud," may be considered:

(1) the transfer or obligation was to an insider;

(2) the debtor retained possession or control of the property transferred after the transfer;

(3) the transfer or obligation was concealed;

(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) the transfer was of substantially all the debtor's assets;

(6) the debtor absconded;

(7) the debtor removed or concealed assets;

(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Tex. Bus. & Com.Code Ann. § 24.005(b); *see Tel. Equip. Network,* 80 S.W.3d at 607–08. When several of these "badges of fraud" are found, they can be a proper basis for an inference of fraud. *Roland,* 838 F.2d at 1403.

The trial court included the following in its conclusions of law: "The conveyance of the property at 5516 Grand Lake Street, Houston, Texas in March of 1997 from [Daniel] to [Robert] was done with actual intent to hinder, delay, and defraud [Judy–Anne] in collection of her money judgment and was a violation of Section 24.005(a)(1) . . . ."[12]

Daniel argues that Judy–Anne did not present any evidence of intent to defraud.[13]

---

**12.** The court also issued a similar finding of fact.

**13.** Further, Daniel argues that his testimony established the transfer was made without intent to defraud as a matter of law. To support this argument, Daniel points to his testimony that he sold the house because he needed money. He had been unemployed for two years prior to the transfer, the property was in disrepair, he had credit card bills, and high attorney's fee bills resulting from the divorce. Daniel also testified that it was not his intent to cheat Judy–Anne by selling the property. Intent can be decided as a matter of law if the evidence conclusively establishes that the transfer was made without intent to defraud. *Coleman Cattle Co. v. Carpentier,* 10 S.W.3d 430, 434 (Tex.App.-Beaumont 2000, no pet.). However, under the circumstances of this case, Daniel's testimony does not conclusively establish lack of intent. *See In re*

Judy–Anne argues that the evidence establishes several "badges of fraud": (1) the transfer was to an "insider"; (2) it was made soon after the judgment was rendered in her favor; (3) it was not an arm's length transaction; (4) it was for all of Daniel's nonexempt assets, leaving Daniel judgment proof; and (5) Daniel received substantially less than the value of the property. Therefore, according to Judy–Anne, the trial court could reasonably infer and correctly concluded that Daniel had intent to defraud.

An "insider" under TUFTA is defined as, among other things, a relative of the debtor. *See* TEX. BUS. & COM.CODE ANN. § 24.002(7). The evidence in the record established and Daniel does not dispute the fact that Robert is his brother. The evidence also established that Daniel executed a warranty deed transferring the property to Robert on March 19, 1997, less than three weeks after Judy–Anne was awarded a judgment against Daniel. Further, Daniel testified that other than the warranty deed, which was prepared by an attorney, the documents evidencing transfer of the property were an agreement, prepared by Daniel and Robert, and a bill of sale which Daniel prepared. There was no vendor's lien, no deed of trust, or note prepared regarding the transfer, nor did Daniel attempt to place the property on the open market. The evidence also reflected that Robert gave Daniel $20,000 in March of 1997, when the property was transferred. Both Daniel and Robert testified that subsequent to the transfer, Robert paid an additional $26,000 in three separate installments: (1) $9,000 on April 8, 1997; (2) $9,000 on April 15, 1997; and (3) $8,000 on April 22, 1997. Daniel cashed these checks on May 21, June 17, and June 25; however, he testified that he was in desperate need of money at the time the property was transferred to Robert. According to Daniel's testimony, he was unable to borrow money because he was deep in debt. Transfer of the Grand Lake house virtually eliminated Daniel's known assets. This evidence suggests that the transfer was not an arm's length transaction.

Regarding intent to defraud, the trial court found: (1) Daniel and Robert were brothers; (2) the transfer occurred seventeen days following Judy–Anne's judgment; (3) Daniel received $20,000 from Robert on March 26, 1997; (4) there was no vendor's lien, promissory note, or deed of trust retained by Daniel to enforce payment of additional money; (5) the property was rented for more than one year before and one year after the transfer; (6) the property was non-exempt; (7) Daniel had no proof that any of the proceeds of the transfer were used to pay the debt owed to Judy–Anne; and (8) Daniel had no non-exempt property following the transfer to Robert. These findings of fact support the court's conclusion that the transfer of property from Daniel to Robert was effectuated with intent to hinder, delay, or defraud Judy–Anne.

Nevertheless, Daniel contends the trial court erroneously relied upon the contents of a letter from University Savings regarding a certificate of deposit which matured ten years prior to the divorce. He argues that the trial court's finding of intent to defraud must be set aside because there is a great weight and preponderance of evidence controverting Judy–Anne's allegations of intent to defraud.

Specifically, when orally rendering judgment, the trial court stated:

*Hinsley,* 201 F.3d 638, 643 (5th Cir.2000) (stating that a party's "self-serving and unsupported claim" that she lacked the necessary

intent did not defeat summary judgment where there was evidence to support a finding of fraud).

And I found particularly disturbing the testimony that he needed to sell the house quickly because he needed some money when the decree obviously awarded assets to him. And in the correspondence that are in some of the pleadings filed with this Court by his attorneys, his response to a motion for summary judgment had attached to it, a letter from the University of Savings [sic] saying that a CD was coming, would be payable in March that was maturing, and that would seem to-anyway, just looking at the whole, of all the transactions, I find that, in this Court's opinion, is clearly undertaken to defraud [Judy–Anne].

Plainly, from these remarks, the court's decision was based on the "whole" of the evidence, "of all the transactions." We disagree with Daniel's argument that the court based its finding of intent to defraud solely on the letter. In addition, as set forth above, the letter was not the only evidence of intent. Examining Daniel's evidence of a lack of intent and the evidence described above, we do not agree that the court's finding of intent is against the great weight and preponderance of the evidence.

In sum, the evidence establishes several of the factors enumerated in section 24.005(b) and is sufficient to support the trial court's findings and conclusion that the transfer was effectuated with "actual intent to hinder, delay, or defraud." *See, e.g., Tel. Equip. Network,* 80 S.W.3d at 609 (finding evidence of five "badges of fraud," concluding there was sufficient evidence of fraudulent transfer); *Jackson Law Office, P.C. v. Chappell,* 37 S.W.3d 15, 26 (Tex. App.-Tyler 2000, pet. denied) (finding evidence sufficient to support several "badges of fraud").

### 2. "Reasonably equivalent value"

■ Judy–Anne also argues that another "badge of fraud" was established because Daniel received substantially less than market value for the Grand Lake house. Daniel argues that the trial court erred in its findings and conclusions regarding reasonably equivalent value.

Under TUFTA, "reasonably equivalent value" is defined as including, "without limitation, a transfer or obligation that is within the range of values for which the transferor would have sold the assets in an arm's length transaction." TEX. BUS. & COM. CODE ANN. § 24.004. Value is determined as of the date of the transfer. *In re Hinsley,* 201 F.3d at 644.

Both parties offered evidence regarding market value of the property. Judy–Anne's expert witness, a real estate appraiser, testified that as of March 1997, the value of the property was $88,000. He stated that the house was a "tear down" and his valuation was limited to the lot and assumed no value to the improvements. He also testified that the tax office had valued the lot at $52,800 in 1997;[14] however, he stated that the tax office had an incorrect lot size, based upon his test measurements and the original plat—the difference being over 2100 square feet—and the tax office used a low price per square foot.

Daniel's expert, a real estate broker, appraised the Grand Lake house in November 1995 for $55,000. His valuation included both the land and the improvements, and included the "as is" condition of the home. The portion of the value which

**14.** The evidence reflected that the county had appraised the property at $78,100 in 1997 and 1998.

he attributed to the land was approximately $12,000. However, he estimated that the land value would increase from $50,000 to $52,000 if the house were considered a "tear down" in 1997.

In its findings and conclusions, the trial court stated that Daniel had received $20,000 from Robert for the property. There is evidence in the record supporting this finding.[15] Whether the value of the property was $88,000, as indicated by Judy–Anne's expert, or $52,000, as indicated by Daniel's expert, $20,000 is considerably less than reasonably equivalent value.

However, Daniel argues that the trial court erred in failing to find that Robert paid $46,000 for the property, arguing that the three installment checks were issued contemporaneously with the transfer. The court did not make any findings regarding whether the checks were issued contemporaneously with the transfer. Although Daniel and Robert testified that the three additional checks were payment for the transferred property and the documents prepared by Robert and Daniel reflected that amount, there was additional testimony that other transfers had occurred between Daniel and Robert which Judy–Anne alleged were fraudulent. As the fact-finder, the trial court was free to disbelieve Robert and Daniel, and to find that $20,000 was the value received for the property. See McGalliard v. Kuhlmann, 722 S.W.2d 694, 697 (Tex.1986); Southwestern Bell Media, Inc. v. Lyles, 825 S.W.2d 488, 493 (Tex.App.-Houston [1st Dist.] 1992, writ denied).

Daniel also argues the court's conclusion that Daniel transferred the property to Robert "without receiving reasonably equivalent value," is in error because the trial court made no finding as to the value of the property. Daniel states that the judgment may not be supported on appeal "by a presumed finding upon any ground of recovery or defense, no element of which has been included in the findings of fact." TEX.R. CIV. P. 299.

In its conclusions, the court stated that the transfer of property was a violation of section 24.005(a)(2)(B). "Reasonably equivalent value" may be an issue under either section 24.005(a)(1), as a "badge of fraud," or section (a)(2) as a required element. Daniel does not assert error on appeal regarding the specific elements of a fraudulent transfer under section 24.005(a)(2)(B), and the trial court found the transfer of property to be fraudulent because it was effectuated with actual intent to hinder, delay, or defraud Judy–Anne.[16] Therefore, we address Daniel's argument as it pertains to section 24.005(a)(1). See Nadolney v. Taub, 116 S.W.3d 273, 280 (Tex.App.-Houston [14th Dist.] 2003, pet. denied) (noting that incorrect conclusions of law do not require reversal if the controlling findings of fact support the judgment under a correct legal theory).

 When a detailed record is before a reviewing court, as in this case, we cannot presume that the evidence is sufficient; however, the presumption of validity regarding the judgment remains, and operates to resolve all other ambiguities in favor of the judgment. Vickery v. Comm'n for Lawyer Discipline, 5 S.W.3d 241, 251 (Tex.App.-Houston [14th Dist.] 1999, pet. denied). In addition, because of this presumption of validity, appellant has the burden of demonstrating error. Id. at 252.

---

15. See supra discussion of evidence in section III.C.1.

16. The court included a similar statement in its conclusions and findings of fact.

In this case, Judy–Anne submitted proposed findings of fact and conclusions of law to the trial court. In her draft, Judy–Anne included a finding that the fair market value of the Grand Lake house in March 1997 was $88,000. However, the court did not include this finding, thus refusing to find the fair market value was $88,000. *See id.* at 251. In her proposed conclusions, Judy–Anne asserted that the "value" received by Daniel in exchange for the property was $20,000. The court incorporated this amount as the value received in its conclusions of law. Therefore, an element of value was included in the court's findings and conclusions. Although we may not presume that the court found the value of the property to be $88,000, we still may presume that the other evidence presented regarding the market value of the property supports the court's conclusion that Daniel received less than reasonably equivalent value. *See id.* at 251–52. If the land was properly valued at $52,000 in March of 1997, as estimated by Daniel's expert and supported by the property tax appraisals, it is clear that $20,000 is less than reasonably equivalent value. Moreover, we note that a trial court is not required to make a specific finding on every controverted fact. *See id.* at 255. A finding on a particular fact is necessary only if it directly relates to controlling issues raised and the court fails to "include sufficient findings upon which to adjudicate the rights of the parties." *Jinks v. Jinks*, 205 S.W.2d 816, 817 (Tex. Civ.App.-Texarkana 1947, no writ). Here, the trial court's judgment included findings sufficient to adjudicate the rights of the parties.

Considering the record in its entirety,[17] we conclude that there was sufficient evidence to support the court's findings and conclusions regarding fraudulent transfer under section 24.005(a)(1) and overrule Daniel's second issue. Having overruled both of Daniel's issues on appeal, we affirm the judgment of the trial court.

---

**17.** Although Daniel specifically argues that there was no evidence of intent presented at trial, the trial court rendered judgment based upon "the testimony, pleadings and official records . . . and all evidence" presented in the case.