Opinion issued July 15, 2010

 

 



 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-08-00600-CV

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



KENNETH VAN SLYKE AND 

PATRICIA VAN SLYKE, Appellants

 

V.

 

TEEL HOLDINGS, LLC, Appellee

 

 



On Appeal from the 80th District Court

Harris County, Texas

Trial Court Cause No. 2005-14060

 

 



MEMORANDUM OPINION

Appellants, Kenneth Van Slyke and
Patricia Van Slyke, challenge the trial court’s judgment, entered after a jury
trial, in favor of appellee, Teel Holdings, LLC (“Teel”), in Teel’s suit
against appellants for violating the Texas Uniform Fraudulent Transfer Act
(“TUFTA”).[1]  In five issues, the Van Slykes contend that
the evidence is legally and factually insufficient to support the jury’s
finding of a fraudulent transfer and its award of damages; the trial court, in
its charge to the jury, erred in combining the theories of actual and
constructive fraud into a single question; and the trial court erred in
awarding Teel its attorney’s fees.

          We
reverse and render judgment in favor of the Van Slykes and remand to the trial
court to consider an award of costs to them.

Background

          The
president of Teel, Leslie Ann Branscum, testified that on January 15, 2002,
Teel, at an interest rate of “14% per annum” to be paid monthly and with principal
due on demand or within one year, loaned $300,000 to Nationwide Box, Inc.
(“Nationwide”) on an unsecured promissory note signed by Nationwide’s
president, who was her husband, Tom Branscum. 
On August 7, 2002, Teel, “deeming itself insecure,” demanded payment in
writing.  When Nationwide did not pay,
Teel filed suit and obtained a $300,000 judgment against Nationwide on May 6,
2003.  

Kenneth Van Slyke, as part-owner and
operator of Nationwide, testified that in 2002, Nationwide had borrowed the
money from Teel because it was “growing very fast [and] had . . . [inherent]
cash flow problems.”  That summer, Tom Branscum
died unexpectedly, and Kenneth took over as president of Nationwide.  With cash flow a continuing problem in October
2002, Nationwide borrowed another $300,000 from Patricia Van Slyke, Kenneth’s
mother, on a secured promissory note (the “October 2002 Loan”) after its largest
customer, Budget Truck Rental, filed for bankruptcy, creating a need to
“bridge[] the financing.”  Patricia advanced
Nationwide $100,000 on September 24, 2002, and another $100,000 on October 9,
2002.  The security agreement, dated
October 21, 2002, and perfected on December 11, 2002, granted Patricia a
security interest in the accounts receivables due Nationwide from its customers
Transpak, NPC (“Transpak”) and Budget Group, Inc.  After Budget Truck Rental made a payment to
Nationwide in December 2002, Nationwide, in satisfaction of the October 2002
Loan, made a $205,000 payment to Patricia on December 27, 2002.  

On March 1, 2003, after Teel had
filed suit against it, Nationwide entered into a second promissory note with
Patricia for a $300,000 line of credit (the “March 2003 Loan”) secured by receivables
from Corrugated Box, Public Storage–PS Orangeco, and Public Storage
(collectively “Corrugated”).  Patricia
perfected her security interest on February 27, 2003.  Kenneth explained that First Capital Credit
(“First Capital”), which routinely bought Nationwide receivables, also had a
priority security interest, previously perfected by a February 9, 2001
financing statement, which listed Nationwide’s “present and future accounts, .
. . and the proceeds of all of the foregoing,” in the same receivables securing
Patricia’s loans. 

When Nationwide entered into the
second note with Patricia, Kenneth had advised her about Teel’s note and its
lawsuit.  Nationwide’s bank statements showed
numerous advances against the line of credit from Patricia to Nationwide and
payments by Nationwide to Patricia.  During
late 2002 and through 2003, Nationwide made no effort to pay Teel.  Kenneth explained that “[he] had full
discretion to pay what [he] deemed most appropriate for the company” and that
was what “kept the company going,” including salaries, taxes, and “key” creditors.

On September 14, 2003, Patricia sent
Nationwide a demand for payment of the outstanding balance on the March 2003
Loan.  Kenneth, acting as Nationwide’s
president, on September 17, 2003, sent to Corrugated a letter, in which he
stated that “all receivables due from you to [Nationwide] have been irrevocably
assigned to Patricia Van Slyke.”  He
directed Corrugated “to make all future payments on such receivables” directly
to her.  No legal documents executing the
assignment had been signed.  After
sending this letter, Kenneth resigned from Nationwide, but he continued to
assist Patricia in getting payment from Corrugated because he was “going to
make sure” that she was repaid the amounts owed to her.

Corrugated initially refused to pay
Patricia because of First Capital’s superior lien.  On October 22, 2003, Patricia’s legal counsel
sent to Corrugated a letter that acknowledged its concern and requested that “all
payments [be made] to [First Capital] in accordance with their lien
position.”  After First Capital terminated
its security interest on December 8, 2003, Corrugated, on April 4, 2004, paid
Patricia $228,443.68 in satisfaction of the March 2003 Loan.  Kenneth explained that Corrugated, as well as
others, owed Nationwide more than that amount, but, after he resigned, he did
not know if Nationwide had collected on those accounts.

On cross-examination, Kenneth
testified that the loans from Patricia were used for “general operating
expenses,” each loan was “legitimate,” Patricia was not repaid more than she
was owed, and he did not intend to defraud any creditor by making the payments
to Patricia.  Nationwide had been paying the
14% interest rate on the Teel note until “2003 sometime.”  After Tom Branscum’s death, and before
Kenneth resigned, Nationwide had continued to prepare financial statements showing
its obligations to Teel and Patricia, and it distributed them to the shareholders,
including Ms. Branscum.

Patricia Van Slyke testified that in
2002, Kenneth periodically advised her that Nationwide needed money “for
operating expenses.”  She “loaned
[Nationwide] money between March and September 2003.  And at the same time [Nationwide] was paying
[her] back . . . from [the] operating expenses.”  Patricia could not recall being told about
the Teel note or other lienholders, such as First Capital.  

On cross-examination, Patricia denied
that she was paid more than she was owed or that she intended to defraud any
creditors.  She explained that she
entered into the notes to help Nationwide “pay[] bills and pay[] [its] people
that worked [there]” and “to protect [Kenneth] to be able to pay his bills and
fulfill his obligation to the company.”  Patricia
“never felt like [she] was assuming a risk because [she] had the security note,
[and she] knew [her] son would pay [her] back.” 


Legal and Factual Sufficiency 

          In
their first issue, the Van Slykes argue that the evidence is legally and
factually insufficient to support the jury’s finding of a fraudulent transfer
because there was no transfer, no actual fraud, and no constructive fraud.  

          We
will sustain a legal sufficiency or “no-evidence” challenge if the record shows
one of the following: (1) a complete absence of evidence of a vital fact, (2)
rules of law or evidence bar the court from giving weight to the only evidence
offered to prove a vital fact, (3) the evidence offered to prove a vital fact
is no more than a scintilla, or (4) the evidence establishes conclusively the
opposite of the vital fact.  City of Keller v. Wilson, 168 S.W.3d
802, 810 (Tex. 2005).  In conducting a
legal sufficiency review, a “court must consider evidence in the light most
favorable to the verdict, and indulge every reasonable inference that would
support it.”  Id. at 822.  If there is more
than a scintilla of evidence to support the challenged finding, we must uphold
it.  Formosa
Plastics Corp. USA v. Presidio Eng’rs & Contractors, Inc., 960 S.W.2d
41, 48 (Tex. 1998). “‘[W]hen the evidence offered to prove a vital fact is so
weak as to do no more than create a mere surmise or suspicion of its existence,
the evidence is no more than a scintilla and, in legal effect, is no evidence.’”
 Ford
Motor Co. v. Ridgway, 135 S.W.3d 598, 601 (Tex. 2004) (quoting Kindred v. Con/Chem, Inc., 650 S.W.2d
61, 63 (Tex. 1983)).  However, if the
evidence at trial would enable reasonable and fair-minded people to differ in
their conclusions, then jurors must be allowed to do so. Keller, 168 S.W.3d at 822; see
also King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003).  “A reviewing court cannot substitute its
judgment for that of the trier-of-fact, so long as the evidence falls within
this zone of reasonable disagreement.”  Keller, 168 S.W.3d at 822.

In conducting a factual sufficiency
review, we must consider, weigh, and examine all of the evidence that supports
or contradicts the jury’s determination.  Plas-Tex,
Inc. v. U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989); London v. London, 192 S.W.3d 6, 14–15
(Tex. App.—Houston [14th Dist.] 2005, pet. denied).  We may set aside the verdict only if the
evidence that supports the jury’s finding is so contrary to the overwhelming
weight of the evidence as to be clearly wrong or unjust.  Cain v.
Bain, 709 S.W.2d 175, 176 (Tex. 1986); Nip
v. Checkpoint Sys., Inc., 154 S.W.3d 767, 769 (Tex. App.—Houston [14th
Dist.] 2004, no pet.).

          In
support of their legal and factual insufficiency challenges, the Van Slykes assert
that the transactions between Nationwide and Patricia contained “standard
provisions found in arms-length loans” and had an “undisputed non-fraudulent purpose”; no evidence showed that “other
creditors were any worse off than before” the transactions; a preference, by
itself, is not a fraudulent transfer; Patricia, as a secured creditor, had a
legal right to favoritism; transfers must be of assets, which do not include
property to the extent that it is encumbered by a valid lien; the “badges” of
actual fraud are mostly absent; and Patricia provided reasonably equivalent
value for the transfers.  Teel counters
that “ample evidence” supports the jury’s finding of fraudulent transfers.

Section 24.005[2] of
TUFTA provides

(a)             
A transfer made .
. . by a debtor is fraudulent as to a creditor, whether the creditor’s claim
arose before or within a reasonable time after the transfer was made . . . , if
the debtor made the transfer . . . :

 

(1)            
with actual
intent to hinder, delay, or defraud any creditor of the debtor; or

 

(2)            
without receiving
a reasonably equivalent value in exchange for the transfer . . . , and the
debtor: 

 

(A)          
was engaged or
was about to engage in a business or a transaction for which the remaining
assets of the debtor were unreasonably small in relation to the business or
transaction; or 

 

(B)           
intended to
incur, or believed or reasonably should have believed that the debtor would
incur, debts beyond the debtor’s ability to pay as they became due.

 

Tex. Bus.
& Com. Code Ann. §
24.005(a) (Vernon 2009).  The purpose of
TUFTA is to prevent debtors from defrauding creditors by placing assets beyond
their reach.  Tel. Equip. Network, Inc. v. TA/Westchase Place, Ltd., 80 S.W.3d
601, 607 (Tex. App.—Houston [1st Dist.] 2002, no pet.).  A creditor has the burden to prove a debtor’s
fraudulent intent, and such intent must be affirmatively shown and will not be
presumed.  Sterquell v. Scott, 140 S.W.3d 453, 460 (Tex. App.—Amarillo 2004,
no pet); Mladenka v. Mladenka, 130
S.W.3d 397, 405 (Tex. App.—Houston [14th Dist.] 2004, no pet.).  Direct proof of fraud is often unavailable;
therefore, circumstantial evidence may be used to prove fraudulent intent.  Mladenka,
130 S.W.3d at 405.  In determining actual
intent under section 24.005(a)(1), when several of the nonexclusive “badges of
fraud” in section 24.005(b) are found, they can form a proper basis for an
inference of fraud.  Id.

Teel complains that four transactions
violated TUFTA: Nationwide’s grant to Patricia of security interests in the
Transpak, Budget Group, and Corrugated receivables as security for the loans;
Nationwide’s payment of $205,000 to Patricia in satisfaction of the October
2002 Loan; Nationwide’s assignment of the Corrugated accounts to Patricia; and
Corrugated’s payment to Patricia of $228,443.68 in satisfaction of the March
2003 Loan.  

Security Interests

Teel bore the burden to prove, by a
preponderance of the evidence, the “transfer” of an “asset” when Nationwide
granted Patricia security interests in the specified accounts receivables.  See
Tex. Bus. & Com. Code Ann. §
24.005; G.M. Houser, Inc. v. Rodgers,
204 S.W.3d 836, 842 (Tex. App.—Dallas 2006, no pet.).  A “transfer” is any means of “disposing of or
parting with an asset or an interest in an asset, and includes payment of money
. . . and creation of a lien or other encumbrance.”  Tex.
Bus. & Com. Code. Ann. § 24.002(12) (Vernon 2009).  An “asset” is “property of a debtor,” but
excludes “property to the extent it is encumbered by a valid lien.”  Id.
§ 24.002(2) (Vernon 2009).  Property is
“anything that may be the subject of ownership.”  Id.
§ 24.002(10) (Vernon 2009).  Property encompasses
“account[s],” which include the “right to payment of a monetary obligation.”  Id.
§ 9.102(2) (Vernon 2009).  A “lien” is “an
interest in property to secure payment of a debt . . . and includes a security
interest created by agreement.” Id. §
24.002(8) (Vernon Supp. 2009).  A “valid
lien” is “a lien that is effective against the holder of a judicial lien
subsequently obtained by legal or equitable process or proceedings.”  Id.
§ 24.002(13) (Vernon 2009).  

In this case, the parties agree that
all of Nationwide’s accounts receivables, or accounts, were encumbered with
First Capital’s priority, perfected security interest, which is a “valid lien”
under TUFTA.  Therefore, Nationwide’s
accounts receivables were not “assets” to the extent that they were encumbered
by this valid lien at the time Nationwide, in consideration for her loans,
granted Patricia a security interest in the Transpak, Budget Group, and
Corrugated receivables.  The record
contains no evidence showing the extent of Nationwide’s indebtedness to First
Capital.  Therefore, Teel did not meet its
burden to show that Nationwide’s granting of these security interests to Patricia
was a “transfer.”  See Mladenka, 130 S.W.3d at
405.  Accordingly, we hold that the
evidence is legally insufficient to establish that the security interests that Nationwide
granted Patricia were fraudulent and Patricia had a “valid lien” that predated
Teel’s judgment in the specified receivables. 


Payments of Cash to Patricia 

          The
$205,000 payment of cash from Nationwide to Patricia in satisfaction of the
October 2002 Loan, the periodic payments of cash from Nationwide to Patricia,
and the $228,000 payment from Corrugated to Patricia in satisfaction of the
March 2003 Loan were transfers because transfers include “payment[s] of money.”
 See
Tex. Bus. & Com. Code Ann. §
24.002(12).  Teel had the burden to affirmatively
show that Nationwide undertook these transfers with actual or constructive
fraudulent intent.  Mladenka, 130 S.W.3d at 405.

Actual Fraud

          To
show “actual fraud,” Teel had to prove that Nationwide acted with “actual
intent to hinder, delay, or defraud” Teel. 
Tex. Bus. & Com. Code Ann.
§ 24.005(a)(1).  Such intent may be established
by the “badges” of fraud, which include whether:

(1)            
the transfer . .
. was to an insider; 

(2)            
the debtor
retained possession or control of the property transferred after the transfer;

(3)            
the transfer . .
. was concealed; 

(4)            
before the
transfer was made . . . , the debtor had been sued or threatened with suit; 

(5)            
the transfer was
of substantially all the debtor’s assets; 

(6)            
the debtor
absconded;

(7)            
the debtor
removed or concealed assets; 

(8)            
the value of the
consideration received by the debtor was reasonably equivalent to the value of
the asset transferred . . . ; 

(9)            
the debtor was
insolvent or became insolvent shortly after the transfer was made . . . ; [and]

(10)       
the transfer
occurred shortly before or shortly after a substantial debt was incurred.[3]

Id. §
24.005(b) (Vernon 2009).  Teel asserts that
“ample evidence” established the badges of fraud, and it cites to a number of
pages in the reporter’s record, but not to specific testimony.  

Here, viewing the evidence in the
light most favorable to the verdict, only the first and fourth badges are
present.  Nationwide did make payments to
an insider, Patricia, and it did so after it had been threatened with suit by
Teel.  However, Nationwide did not retain
possession or control of the payments after they had been made to Patricia.  Nor did it abscond with, remove, or conceal
assets.  Nationwide’s financial
statements included the obligations to Teel and Patricia and the payments to
Patricia.  The payments did not amount to
substantially all of Nationwide’s assets because Nationwide continued to
operate and had outstanding accounts receivables that were greater than the
amounts owed to Patricia.  The amount of
debt cancelled by Patricia was reasonably equivalent to the value of the
payments she received from Nationwide.  The
transfers to Patricia did not occur shortly before or after Nationwide entered
into the note with Teel.  Finally, there
is no evidence of Nationwide’s solvency status after the transfers. 

The facts here stand in contrast to
those in Telephone Equipment Network,
in which an insider, Telephone Equipment Network (“TEN”), bought three of debtor-Southwest’s
notes from Sterling Bank; TEN’s only business purpose was to hold the notes; the
complaining creditor then sued Southwest; Southwest attempted to conceal the
obligation to TEN from the creditor and immediately defaulted on the notes
after TEN purchased them, enabling TEN to foreclose on the notes; and TEN
provided short notice to the creditor of its intent to foreclose on all of
Southwest’s assets, which were worth four times the amount of the security
interest, and to bid on the assets at the sale to be conducted in the offices
of TEN and Southwest’s “shared” counsel. 
80 S.W.3d at 605, 609.  The court
found these facts “significant” and “suggestive” of an actual intent by
Southwest to defraud the creditor.  Id. at 609.

The situation here is more akin to those
in Texas Custom Pools, Inc. v. Clayton,
in which the debtor, after the complaining creditor began attempting to enforce
a judgment, took a loan specifically to pay a pre-existing unsecured debt to
shareholders.  293 S.W.3d 299, 313 (Tex.
App.—El Paso 2009, no pet.).  The court
found three badges of fraud—the debtor made a transfer to an insider (the
shareholders), the debtor had been sued before the transfer, and the transfer
occurred three months after the judgment was entered in favor of the creditor.  Id.
at 313–14.  However, it held that they
were not sufficient to show actual intent to defraud the creditor because even
when considered together, they were not a “particularly strong” indicator of
actual intent to hinder, delay, or defraud the Claytons.  Id.
at 314.  

In this case, only two badges of
fraud are present, and Nationwide made a choice, similar to the debtor in Clayton, to pay other creditors,
including Patricia, instead of Teel. As in Clayton,
the badges, even when considered together, are not a “particularly strong”
indicator of the Van Slykes’ actual intent to hinder, delay, or defraud Teel.  Clayton
stands for the proposition that a mere choice to pay one creditor over another,
even when the second creditor has already sued the debtor, does not, by itself,
establish fraudulent intent.  See id.  

Patricia, unlike the unsecured
shareholders in Clayton, was a
perfected, secured creditor with, as we have held, a valid lien that had
priority over Teel’s judgment.  See Tex.
Bus. & Com. Code Ann. § 9.317(a) (Vernon Supp. 2009) (security
interest is superior to rights of person that becomes lien creditor after security
interest is perfected).  She was entitled
to payment out of her collateral.  See id.
§ 9.203(b) (Vernon Supp 2009) (security interest is enforceable against debtor
and third parties with respect to collateral when value has been given, debtor
has rights in collateral, and debtor authenticates security agreement that
provides description of collateral). 
Hence, Nationwide’s $205,000 payment to Patricia in satisfaction of the
October 2002 Loan and the payments made against the October 2003 Loan did not,
by themselves, demonstrate fraudulent intent but were permissible to satisfy
Patricia’s security interests.  

Additionally, Kenneth’s efforts to
get Corrugated to pay Patricia were permissible because the Corrugated accounts
were Patricia’s collateral through her security interest, regardless of whether
Nationwide had also assigned them to her. 
See id. §§ 9.607(a)(1), (3) (Vernon 2002) (if so agreed, secured party
may enforce obligations of account debtor as if secured party was debtor).  Thus, the $228,000 payment from Corrugated to
Patricia was not, by itself, indicative of fraud but an enforcement of her
right to payment from her collateral.  Moreover,
no evidence showed that Patricia was paid more than she was owed such that
reasonably equivalent value was not exchanged. 
Accordingly, we hold that the evidence is legally insufficient to establish
that Nationwide acted with actual intent to hinder, delay or defraud Teel by
paying Patricia.

Constructive Fraud

To show “constructive fraud,” Teel had
to prove that Nationwide did not receive “reasonably equivalent value” in
exchange for the payments it made to Patricia and Nationwide (1) “was engaged
or was about to engage in a business or a transaction for which the remaining
assets of [Nationwide] were unreasonably small in relation to the business or
transaction” or (2) “intended to incur, or believed or reasonably should have
believed that [it] would incur, debts beyond [its] ability to pay as they
became due.”  See Tex. Bus. & Com.
Code Ann. § 24.005(a)(2). 
“Reasonably equivalent value” means a transfer “that is within the range
of values for which the transferor would have sold the assets in an arm’s length
transaction.”  Id. § 24.004(d) (Vernon 2009). 
When Patricia loaned Nationwide $560,000 in cash in exchange for
security interests in specific accounts receivables, she, as a matter of law,
gave reasonably equivalent value for the security interests.  See
First Nat’l Bank of Seminole v. Hooper,
104 S.W.3d 83, 84 (Tex. 2003) (holding “as a matter of law, the value of the
interest in an asset transferred for security is reasonably equivalent to the
amount of debt is secures”).  Likewise,
when Nationwide and Corrugated paid cash to Patricia in satisfaction of her
security interests, these were exchanges of reasonably equivalent value because
Patricia was paid exactly the amount that she was owed in exchange for
canceling Nationwide’s debts to her.  See Tex.
Bus. & Com. Code Ann. § 24.004(a), (d).  Accordingly, we hold that the evidence is
legally insufficient to establish that Nationwide engaged in constructive fraud
against Teel by paying Patricia.  

We sustain the Van Slykes’ first
issue.  

Having sustained their first issue,
we do not reach the Van Slykes’ second, third, and fourth issues.

Attorney’s Fees

In their fifth issue, the Van Slykes
argue that “the award of costs and attorney’s fees to Teel should be set aside
and costs awarded” to them because if the trial court’s judgment is reversed, “the
award [of attorneys fees to Teel] is no longer “equitable and just.”  

In their stipulations to the trial
court, the parties provided that Teel would be awarded specified attorney’s
fees if Teel “prevail[ed].”  A prevailing
party must receive “at least some relief on the merits of his claim.”  Intercontinental
Group P’ship v. KB Home Lone Star L.P., 295 S.W.3d 650, 654 (Tex. 2009) (quoting
Hewitt v. Helms, 482 U.S. 755, 760,
107 S. Ct. 2672, 2679 (1987)).  Because
we have sustained the Van Slykes’ first issue, Teel is no longer the prevailing
party.  Accordingly, we reverse the trial
court’s award of attorney’s fees and costs to Teel. 

The Van Slykes prayed to recover
“their costs of court.”  TUFTA provides
that “the court may award costs and reasonable attorney’s fees as are equitable
and just.”  Tex. Bus. & Com. Code Ann. § 24.013 (Vernon 2009).  Accordingly, a remand of this case to the
trial court is appropriate to determine whether an award of costs to the Van
Slykes is “equitable and just.”[4]

We sustain the Van Slykes’ fifth
issue.

Conclusion

We reverse the judgment of the trial
court and render judgment in favor of the Van Slykes.  We remand the case to the trial court to
consider whether an award of costs to the Van Slykes is equitable and
just.  See Tex. Bus. & Com.
Code Ann. § 24.013.

 

 

 

                                                                             Terry
Jennings

                                                                             Justice

 

Panel consists of Justices Jennings,
Hanks, and Bland.











[1]           See Tex. Bus. & Com. Code Ann.
§§ 24.001–.013 (Vernon 2009).

 





[2]           Although Teel pleaded fraudulent
transfer under sections 24.005 and 24.006, the trial court, in its instructions
to the jury, discussed only section 24.005.

 





[3]           Badge number eleven, “the debtor transferred the essential assets
of the business to a lienor who transferred the assets to an insider of the
debtor,” is not at issue here.  See Tex.
Bus. & Com. Code Ann. § 24.005(b)(11).





[4]           In their briefing, the Van Slykes do
not ask for attorney’s fees.  Thus, we do
not remand for a consideration of whether the trial court should award
attorney’s fees.