John R. HAAS, Appellant,

v.

ASHFORD HOLLOW COMMUNITY IMPROVEMENT ASSOCIATION, INC., Appellee.

No. 14–05–00071–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 14, 2006.

---

Thomas E. Ross, Houston, for appellant.

Neil Hugh McLaurin IV, Walter Edward Spears, Houston, for appellee.

Panel consists of Justices ANDERSON, EDELMAN, and SEYMORE.

## OPINION

CHARLES W. SEYMORE, Justice.

Appellant, John R. Haas, appeals from a judgment awarding appellee, Ashford Hollow Community Improvement Association, Inc. ("the Association"), delinquent maintenance assessments for 2003 and 2004 and ordering foreclosure on a lien securing payment of the assessments. In five issues, Haas contends (1) the trial court lacked jurisdiction to enforce a lien on his real property, (2) the trial court lacked jurisdiction over the Association's claim to recover the assessments, (3) the trial court erred by awarding 2004 assessments, (4) the trial court erred by awarding attorney's fees, and (5) the attorney's fees were excessive. We affirm.

## I. BACKGROUND

In October 2003, the Association sued Haas, a property owner, alleging he breached the restrictive covenants governing his subdivision by failing to pay maintenance assessments for 2003. The Association also alleged that it anticipated Haas would refuse to pay the 2004 assessments, which would become due between the filing of the petition and the trial. Thus, the Association sought recovery of assessments for 2003 and 2004. The Association further alleged that the restrictive covenants allowed it to place a lien on Haas's property to secure payment of the assessments, and the Association sought to foreclose its lien in this suit.

The trial court conducted a bench trial in August 2004. At the start of the trial, the trial court held a hearing to consider Haas's plea to the jurisdiction that was included in his live answer and his "motion for partial directed verdict" on the ground

that the Association was not entitled to recover attorney's fees. The trial court denied the plea to the jurisdiction and the "motion for partial directed verdict." The parties then stipulated regarding the amounts of the assessments for 2003 and 2004 and that they were delinquent. The only remaining issue to be tried concerned the amount of the Association's attorney's fees. Following presentation of evidence, the trial court entered judgment for the Association to recover $716.11, plus post-judgment interest and attorneys' fees. In addition, the trial court ordered that the Association have a lien on the property as set forth in the restrictive covenants and ordered foreclosure on the lien.

## II. JURISDICTION TO ENFORCE THE LIEN ON REAL PROPERTY

In his first issue, Haas contends the trial court did not have jurisdiction to enforce the lien on his real property because the amount in controversy was less than the minimum jurisdictional limits of a statutory county court at law. Whether a court has subject matter jurisdiction is a question of law that we review *de novo*. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex.2004). As we will discuss, we disagree that the amount in controversy with respect to Haas's claim to recover the assessments was less than the minimum jurisdictional limit of the court. Regardless, the trial court had jurisdiction to enforce the lien on Haas's property, irrespective of the amount in controversy.

Section 25.0003 of the Texas Government Code governs the jurisdiction in general of statutory county courts and prescribes the monetary jurisdictional limits of statutory county courts. *See* TEX. GOV'T CODE ANN. § 25.0003 (Vernon Supp.2006). Section 25.1032 of the Government Code contains additional jurisdictional provisions

particular to Harris County civil courts at law. TEX. GOV'T CODE ANN. § 25.1032 (Vernon 2004). Section 25.1032(c)(3) provides, *"In addition to other jurisdiction provided by law,* a [Harris] county civil court at law has jurisdiction to ... hear a suit for enforcement of a lien on real property ..." *Id.* § 25.1032(c)(3) (emphasis added).

■ Therefore, contrary to Haas's contention, section 25.1032(c)(3) does not make a Harris County Civil Court at Law's jurisdiction to hear a suit to enforce a lien on real property dependent upon the amount of the indebtedness secured by the lien or upon the trial court's jurisdiction to award the indebtedness as monetary damages. *See id.* Rather, the trial court's jurisdiction to hear a suit to enforce a lien on real property is based on subject matter, not the amount in controversy. *See id.; see also In re Burlington N. and Santa Fe Ry. Co.,* 12 S.W.3d 891, 899 (Tex.App.-Houston [14th Dist.] 2000, orig. proceeding [mand. denied]) (holding Fort Bend County Court at Law had jurisdiction to issue injunction in eminent domain suit although county did not state an amount in controversy within court's jurisdictional limits because Legislature had expressly conferred jurisdiction on court to hear eminent domain cases based on subject matter, not the amount in controversy).

Moreover, the Association alleged that the restrictive covenants entitled it to place and foreclose a lien for outstanding assessments.[1] Therefore, the Association pleaded that it was entitled to foreclose the lien independent of any recovery for the assessments in this suit. Accordingly,

the trial court had jurisdiction to hear the suit to enforce the lien on Haas's property independent of the amount of the assessments or its jurisdiction to award the assessments as monetary damages. We overrule Haas's first issue.

## III. JURISDICTION OVER THE CLAIM TO RECOVER THE ASSESSMENTS

Haas also argues the trial court did not have jurisdiction over the Association's claim to recover the assessments because the amount in controversy was less than the minimum jurisdictional limits of the court. The statutory county court has jurisdiction when the amount in controversy exceeds $500 but does not exceed $100,000, excluding interest, statutory or punitive damages and penalties, and attorney's fees and costs, as alleged on the face of the petition. *See* TEX. GOV'T CODE ANN. § 25.0003(c)(1); *Smith v. Clary Corp.,* 917 S.W.2d 796, 798 (Tex.1996); *Weidner v. Sanchez,* 14 S.W.3d 353, 360 (Tex.App.-Houston [14th Dist.] 2000, no pet.). Here, Haas contends the amount in controversy, excluding interest, statutory or punitive damages and penalties, attorney's fees and costs, was less that $500.

■ The allegations in the plaintiff's petition establish the amount in controversy for a jurisdictional analysis unless the defendant pleads and proves that the allegations were made fraudulently for the purpose of obtaining jurisdiction or the defendant can readily establish that the amount in controversy is insufficient. *See Miranda,* 133 S.W.3d at 223, 224 n. 4; *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex.2000); *Retzlaff v. Deshay,*

---

1. The restrictive covenants provide that the annual assessments, interest, costs, and reasonable *attorneys' fees*, "shall be a charge on the Lot and shall be a continuing lien upon the Lot against which each such assessment was made." The restrictive covenants further

provide that, in the event of nonpayment, "The Association may bring an action at law against the Owner personally obligated to pay the assessment, *or* foreclose the lien against the Lot involved." (emphasis added).

No. 14–03–00833–CV, 2004 WL 2163173, at *2 & n. 4 (Tex.App.-Houston [14th Dist.] Sept. 28, 2004, no pet.) (mem.op.) (recognizing party may meet his burden to challenge jurisdiction if he can establish allegation as to amount in controversy was "fraudulently made for the purpose of conferring jurisdiction" or "readily establish that the amount in controversy is insufficient"). However, if the plaintiff fails to state an amount in controversy in its petition, the trial court is not thereby deprived of jurisdiction if jurisdiction is proved at trial. *Peek v. Equip. Serv. Co.*, 779 S.W.2d 802, 804–05 (Tex.1989); *French v. Moore*, 169 S.W.3d 1, 6–7 (Tex.App.-Houston [1st Dist.] 2004, no pet.).

██ When a plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court must consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issue. *Miranda*, 133 S.W.3d at 227. If the evidence creates a fact question regarding the jurisdictional issue, the trial court cannot grant the plea to the jurisdiction and must submit the issue to the fact finder. *Id.* at 227–28. Conversely, if the evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court should rule on the plea to the jurisdiction as a matter of law. *Id.* at 228.

██ In its October 2003 petition, the Association pleaded for recovery of the delinquent 2003 assessments and the 2004 assessments that would become due and delinquent between filing of the petition and trial. The only statement in the petition regarding the amount in controversy was the following:

Pursuant to [the restrictive covenants], [the Association] has levied assessments against [Haas's] lot. To date [Haas has] failed to pay one or more of the assessments, interest, and attorney's fees and/or related charges totaling at least $1,811.28, plus charges which accrue after the date hereof, plus interest and attorney's fees as set out in [subsequent paragraphs], which is an amount in excess of the minimum jurisdictional limits of this Court. In addition, it is anticipated that [Haas] will continue to fail and refuse to pay additional assessments and/or related charges to be levied by [the Association] between the date of filing of this Petition through and including the date of trial. Accordingly, [the Association] sues [Haas] for all assessments and/or related charges as may become due and payable prior to and through the trial of this cause.

Haas asserted in his plea to the jurisdiction that this statement was fraudulent and made solely for the purpose of conferring jurisdiction because the Association improperly included interest, attorney's fees, costs, and the 2004 assessments when alleging the amount in controversy is $1,811.28. Contrary to Haas's assertion, the Association did not include the 2004 assessments in the $1,811.28 figure. According to the foregoing paragraph, the $1,811.28 figure represented the assessments that were delinquent at that time (the 2003 assessments), although it did include past and future interest, attorney's fees, and costs associated with the 2003 assessments. The Association then also requested the 2004 assessments that would become due and delinquent before trial, but did not state an amount for the 2004 assessments.[2]

██ Nonetheless, Haas did present evidence at the hearing on his plea to the

---

2. In its prayer, the Association again requested all amounts that would be outstanding at the time of trial but did not plead a total amount in controversy in the prayer.

jurisdiction indicating that the amount in controversy with respect to the claim for the 2003 assessments was not $1,811.28 as pleaded, but an amount less than the $500 minimum jurisdictional limit of the court.[3] Haas suggests that, therefore, the trial court did not have jurisdiction because the claim for the 2004 assessments could not also be considered when determining the amount in controversy. We disagree. If one plaintiff asserts multiple claims against one defendant, the amounts of each separate claim are aggregated to determine the amount in controversy. *French,* 169 S.W.3d at 7. However, one of the Association's separate claims, the claim for the 2004 assessments had not yet accrued because, as Haas correctly asserts, the 2004 assessments were not yet due, much less delinquent, when the suit was filed.[4]

Haas does not cite, and we have not found, any cases addressing whether a homeowners association's unaccrued claim to recover an assessment is included when determining the amount in controversy for jurisdictional purposes. In a somewhat similar situation, this court previously considered a lessor's claim to recover future lease payments as they accrued when determining the amount in controversy. In *Williams v. Le Garage De La Paix, Inc.,* the lessor sued the lessee for breach of a five-year lease. 562 S.W.2d 534, 535 (Tex. Civ.App.-Houston [14th Dist.] 1978, writ ref'd n.r.e.). The lessor filed suit in mid-July 1974, alleging that the lessee was delinquent on the June 1974 payment. *Id.* The lessor also sued for all monthly rentals that would become due and accrue until December 1, 1977, which was the last month of the rental period, or the date of trial, whichever came first. *See id.* at 535–36. We recognized that the amount in controversy is "determined by the value to the plaintiff of the right that he asserts in good faith in his pleading setting forth the operative facts constituting his cause of action." *Id.* at 535. We further recognized that each month's rental under a lease contract constitutes a separate and independent cause of action, and the lessor could have sued only for the June delinquency, an amount within the jurisdictional limits of the court. *Id.* However, by suing for all future monthly rentals as they accrued, the lessor put in issue a sum in excess of the jurisdictional limits of the court. *See id.* at 536.[5]

**3.** Specifically, he introduced the Association's demand letter sent seven weeks before it filed suit, stating that the balance due was $417.48, which "represents maintenance assessments, attorney's fees, interest, and costs of collection." The Association did not specify how much of this amount was attorney's fees, interest, and costs, which cannot be considered when determining the amount in controversy. *See* TEX. GOV'T CODE ANN. § 25.0003(c)(1). However, the actual 2003 assessment was necessarily less than $500. The Association did not present any controverting evidence. Instead, it argued, albeit incorrectly, that attorney's fees, interest, and costs are considered when determining the amount in controversy. *See id.*

**4.** Haas incorrectly characterizes the Association's request for the 2004 assessments as a claim for anticipatory breach. He states the Association had no claim for anticipatory breach because it could not know whether he would own the home and thus have any obligation when the assessments fell due. "Anticipatory breach" is a defined cause of action available when a party is obligated to make future payments of money to another and absolutely repudiates the obligation without just excuse. *See Taylor Publ'g Co. v. Sys. Mktg. Inc.,* 686 S.W.2d 213, 217 (Tex.App.-Dallas 1984, writ ref'd n.r.e.). The Association did not use the term "anticipatory breach" and effectively acknowledged in the petition that the obligation to pay the 2004 assessments would arise after it filed its petition. Nonetheless, Haas correctly suggests that the Association pleaded a claim that had not yet accrued.

**5.** We first stated that the June and July delinquencies alone put the amount in controversy over the jurisdictional limit of the trial court

In *Williams*, the lessor's inclusion of the unaccrued claim for future lease payments in its petition deprived the trial court of jurisdiction by causing the amount in controversy to *exceed* the jurisdictional limit of the court. *See id.* at 535–36. Here, we are determining whether the Association's inclusion of the unaccrued claim for the 2004 assessments in its petition invoked the trial court's jurisdiction by bringing the total amount in controversy *within* the jurisdictional limit of the court. Despite this distinction, we find *Williams* applicable to the extent the court included an unaccrued claim when determining the amount in controversy because the plaintiff placed that claim at issue in its petition. *See id.; see also Tune v. Texas Dept. of Public Safety*, 23 S.W.3d 358, 361 (Tex.2000) (stating that "amount in controversy" in jurisdictional context means "the sum of money or the value of the thing originally sued for"); BLACK'S LAW DICTIONARY 84 (7th ed.1999) (defining "amount in controversy" as the "damages claimed or relief demanded by the injured party in a lawsuit.").

In its petition, the Association sought to recover the 2004 assessments, alleging they would become due and delinquent before trial. Haas presented no evidence that the Association sought the 2004 assessments in bad faith to confer jurisdiction. In fact, the evidence negated any bad faith, considering that Haas presented evidence showing the 2004 assessments were billed only a month after the Association filed its petition and were due two months after it filed the petition. Consequently, the claim for the 2004 assessments may be included when determining the amount in controversy.

because payments were due in advance and the lessor filed suit in mid-July. *Williams*, 562 S.W.2d at 535. But we then held that, regardless of when the lessor filed suit, he still

However, as we have discussed, the Association did not plead an amount with respect to the 2004 assessments. Therefore, we view this case as a situation in which the plaintiff failed to state a total amount in controversy because it asserted two claims but only stated an amount with respect to one claim. Accordingly, jurisdiction could be proved at trial. *See Peek*, 779 S.W.2d at 804–05; *French*, 169 S.W.3d at 6–7. At trial, the parties stipulated that the 2003 assessment was $301.01, the 2004 assessment was $301.01, and both were delinquent. Because the amount in controversy exceeded the $500 minimum jurisdictional limit of the court, excluding attorney's fees, interest, and costs, the trial court had jurisdiction. We overrule Haas's second issue.

## IV. 2004 ASSESSMENTS

In his third issue, Haas argues the trial court erred by awarding the 2004 assessments because there was no pleading to support this award. Although the Association pleaded for recovery of the 2004 assessments which would become delinquent before trial, Haas complains that the Association did not amend its petition before trial to specify that the 2004 assessments had become delinquent.

Even if the Association did not sufficiently plead its claim for the 2004 assessments, the claim was tried by consent. "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." TEX.R. CIV. P. 67. To determine whether an unpleaded issue was tried by consent, we examine the record not for evidence of the issue, but rath-

alleged an amount in excess of the jurisdictional limit of the court by seeking all future delinquencies as they accrued. *See id.* at 535–36.

er for evidence of trial of the issue. *Johnston v. McKinney Am., Inc.*, 9 S.W.3d 271, 281 (Tex.App.-Houston [14th Dist.] 1999, pet. denied). An party's unpleaded issue may be deemed tried by consent when evidence on the issue is developed under circumstances indicating both parties understood the issue was in the case, and the other party failed to make an appropriate complaint. *Johnson v. Structured Asset Servs., LLC*, 148 S.W.3d 711, 719 (Tex. App.-Dallas 2004, no pet.).

At trial, Haas stipulated regarding the amount of the 2004 assessments and that the amount was delinquent. He then agreed that the only issue remaining was the Association's claim for attorneys' fees. Thus, Haas clearly indicated the 2004 assessments were at issue and did not complain that there was no supporting pleading. Because the Association's claim for the 2004 assessments was tried by consent, we overrule Haas's third issue.

### V. ATTORNEY'S FEES

In his fourth and fifth issues, Haas contends the trial court erred by awarding attorney's fees and the fees are excessive.

### A. Award of Attorney's Fees

█ First, Haas argues the trial court erred by awarding attorney's fees. Whether attorney's fees are authorized in a particular case is a question of law to be determined by the court. *See Jim Rutherford Invs., Inc. v. Terramar Beach Cmty. Ass'n*, 25 S.W.3d 845, 853 (Tex. App.-Houston [14th Dist.] 2000, pet. de-

nied). The Association requested attorney's fees pursuant to the restrictive covenants, section 5.006 of the Texas Property Code, and section 38.001 of the Texas Civil Practice and Remedies Code. Haas does not seem to dispute that, at least, section 5.006 of the Texas Property Code generally authorizes an award of attorney's fees in this case. Section 5.006(a) of the Property Code provides, "In an action based on breach of a restrictive covenant pertaining to real property, the court shall allow to a prevailing party who asserted the action reasonable attorney's fees in addition to the party's costs and claim." TEX. PROP. CODE ANN. § 5.006(a) (Vernon 2004); *Mitchell v. LaFlamme*, 60 S.W.3d 123, 130 (Tex.App.-Houston [14th Dist.] 2000, no pet.) (holding award of attorney's fees under section 5.006 is mandatory).[6]

█ However, Haas contends the Association was required to comply with section 209.008(a) of the Texas Property Code as a prerequisite to recovery of attorney's fees, but the Association did not comply with that provision. Section 209.008(a) provides:

A property owners' association may collect reimbursement of reasonable attorney's fees and other reasonable costs incurred by the association relating to collecting amounts, including damages, due the association for enforcing restrictions or the bylaws or rules of the association only if the owner is provided a written notice that attorney's fees and costs will be charged to the owner if the

---

6. In addition, the restrictive covenants provide that the annual assessments, together with interest, costs, and reasonable attorney's fees, shall be a continuing lien upon the property and the personal obligation of the property owner at the time the assessment was due. Section 38.001(8) of the Civil Practice and Remedies Code provides that a party may recover reasonable attorney's fees when it

prevails on a contract claim. TEX. CIV. PRAC. & REM.CODE ANN. § 38.001(8) (Vernon 1997); *see Hassell Constr. Co., Inc. v. Stature Commercial Co., Inc.*, 162 S.W.3d 664, 668 (Tex.App.-Houston [14th Dist.] 2005, no pet.) (holding award of attorney's fees to party prevailing on contract claim is mandatory under section 38.001 if there is proof of the reasonableness of the fees).

delinquency or violation continues after a date certain.

TEX. PROP.CODE ANN. § 209.008(a) (Vernon Supp.2006).

The Association's counsel sent a letter to Haas approximately seven weeks before filing suit. The caption shows, "Balance Due: $417.48." In the body, counsel stated:

The balance due of $417.48 represents maintenance assessments, *attorney's fees*, interest, and costs of collection through and including the date of this letter ... Demand is hereby made upon you to pay to [the Association] $417.48 within thirty (30) days of the date of this letter.... Please be advised that should we not receive payment pursuant to this demand, we will recommend that a lawsuit be filed immediately thereafter in a court of competent jurisdiction seeking recovery of the money owed our client, together with reasonable attorneys' fees and costs of court.

(emphasis added).[7]

Haas contends the Association did not comply with section 209.008(a) because it demanded attorney's fees as part of the delinquency instead of demanding that the delinquency be cured before it would seek attorney's fees. Although the Association asserts it complied with section 209.008(a), it suggests, as it did in the trial court, that section 209.008(a) does not even apply to this matter. We agree that section 209.008(a) does not apply.

Section 209.008(a) is part of the "Texas Residential Property Owners Protection Act," effective January 1, 2002. *See* TEX. PROP.CODE ANN. §§ 209.001–.011 (Vernon Supp.2006). Section 209.008(a) is not a model of clarity, and we have found only one case addressing this provision, presumably because of its recent origin. In that case, the court concluded the statute did not apply because the homeowner's association sought a temporary injunction and the statute applies to "collection matters," but the court did not elaborate on what it meant by "collection matters." *See Tees v. East Lake Woods Homeowners Ass'n*, No. 12–04–00020–CV, 2006 WL 133229, *6 (Tex.App.-Tyler 2006, no pet. h.) (mem.op.).

Our ultimate goal in construing a statute is to give effect to the Legislature's intent as expressed in the language of the statute. *See Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 892 (Tex.2000). Based on the language of section 209.008(a), we conclude that it does not apply to attorney's fees incurred merely to collect delinquent assessments or enforce a lien due to nonpayment of the assessments. The statute specifically applies to attorney's fees "relating to collecting amounts, including damages, due the association *for enforcing* restrictions." TEX. PROP.CODE ANN. § 209.008(a) (emphasis added). The assessments are not "amounts, including damages, due the association *for enforcing* restrictions." We read this phrase as describing, for example, situations where an association has incurred costs or sustained damages to remedy a violation or has levied a fine for a violation.[8]

---

7. This letter was the only demand letter introduced into evidence, and it appears undisputed that it was the only demand letter sent.

8. Section 209.008(a) does not state that it applies to attorney's fees "relating to collecting amounts, including damages, due the association *under* the restrictions" or to attorney's fees "relating *to* enforcing restrictions." In such cases, it would presumably apply to attorney's fees incurred to collect assessments or enforce a lien due to nonpayment of assessments. Rather, the statute applies to attorney's fees "relating to collecting amounts, including damages, due the association *for en-*

We find harmony in the statute by reading section 209.008(a) in the context of the entire act, especially the immediately preceding provisions. *See City of San Antonio v. City of Boerne,* 111 S.W.3d 22, 25 (Tex.2003) (recognizing that, in construing a statute, appellate court determines legislative intent from the entire act and not just its isolated portions and, thus, reads the statute as a whole and interprets it to give effect to every part). Section 209.006, entitled "Notice Required Before Enforcement Action," provides as follows:

(a) Before a property owners' association may suspend an owner's right to use a common area, file a suit against an owner *other than a suit to collect a regular or special assessment or foreclose under an association's lien,* charge an owner for property damage, or levy a fine for a violation of the restrictions or bylaws or rules of the association, the association or its agent must give written notice to the owner by certified mail, return receipt requested.

(b) The notice must:

(1) describe the violation or property damage that is the basis for the suspension action, charge, or fine and state any amount due the association from the owner; and

(2) inform the owner that the owner:

(A) is entitled to a reasonable period to cure the violation and avoid the fine or suspension unless the owner was given notice and a reasonable opportunity to cure a similar violation within the preceding six months; and

(B) may request a hearing under Section 209.007 on or before the 30th day after the date the owner receives the notice.

TEX. PROP.CODE ANN. § 209.006 (Vernon Supp.2006) (emphasis added).

Section 209.007 describes the procedures governing the hearing referenced in section 209.006. *See* TEX. PROP.CODE ANN. § 209.007 (Vernon Supp.2006). Section 209.007(d) provides that "The notice and hearing provisions of Section 209.006 and this section do not apply if the association files a suit . . . that includes foreclosure as a cause of action." *Id.* § 209.007(d). Therefore, an association is not even required to give a homeowner notice and an opportunity to cure pursuant to section 209.006 before filing suit to collect assessments or foreclose a lien due to unpaid assessments. *See id.* §§ 209.006; 209.007(d). Thus, our construction of section 209.008(a) is consistent with the manifested intent of the Legislature to exempt such suits from the notice requirements otherwise applicable when an association incurs costs or charges a homeowner to enforce a restriction.

We conclude that the Association was not required to comply with the notice prerequisite of 209.008(a) to recover attorney's fees in this case. Accordingly, the fact that the Association included attorney's fees when demanding that Haas pay the delinquent assessments is immaterial to the Association's ability to recover attorney's fees in this suit. We overrule Haas's fourth issue.

## B. Amount of Attorney's Fees

Finally, Haas asserts that the attorney's fees awarded pursuant to section 5.006 of the Property Code were excessive. To determine reasonable attor-

---

*forcing* restrictions." TEX PROP.CODE ANN. § 209.008(a) (emphasis added). In construing a statute, we give effect to all its words and, if possible, do not treat any statutory language as mere surplusage. *Cont'l Cas. Ins. Co. v. Functional Restoration Assocs.,* 19 S.W.3d 393, 402 (Tex.2000). Thus, we must give effect to the word "for."

ney's fees under section 5.006, the court shall consider: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the expertise, reputation, and ability of the attorney; and (4) any other factor. TEX. PROP.CODE ANN. § 5.006(b) (Vernon 2004). The reasonableness of attorney's fees recoverable under section 5.006 is a question of fact for the trier of fact. *See Jim Rutherford Invs.*, 25 S.W.3d at 853; *Gorman v. Countrywood Prop. Owners Ass'n*, 1 S.W.3d 915, 918 (Tex.App.-Beaumont 1999, pet. denied).

In this case, the trial court made a finding of fact that the following attorney's fees were reasonable and necessary and entered judgment accordingly: $5,500 through the trial; $1,000 if Haas files a motion for new trial; $3,500 if he appeals to a court of appeals; $3,500 if he files a petition for review in the Texas Supreme Court; and $1,000 if the petition for review is granted and appeal is taken to the Supreme Court. Haas asserts that these fees were not reasonable because this case was a simple, routine property owners' association suit to collect a debt and enforce a lien, involving minimal pleadings and a short trial. Although Haas does not specifically attack the finding of fact or the sufficiency of the evidence to support this finding, we read his complaint as a challenge to the sufficiency of the evidence supporting the finding.

Findings of fact in a bench trial have the same force and dignity as a jury's verdict upon jury questions. *Arrellano v. State Farm Fire and Cas. Co.*, 191 S.W.3d 852, 855–56 (Tex.App.-Houston [14th Dist.] 2006, no pet.). We conduct a legal and factual sufficiency review of a trial court's findings by the same standards applied when reviewing evidence supporting a jury's answer. *Id.* at 856. If a party attacks the legal sufficiency of the evidence supporting an adverse finding on

an issue on which it did not have the burden of proof, the party must demonstrate on appeal no evidence supports the adverse finding. *Id.* When a party attacks the factual sufficiency of a finding, we set aside the finding only if it is so contrary to the overwhelming weight and preponderance of the evidence that it is clearly wrong and manifestly unjust. *Id.*

Stephen Hamilton, one of the Association's attorneys, who had practiced law for twenty years and was Board–Certified in civil trial law testified regarding the Association's attorney's fees. With respect to the time and labor required, Hamilton testified that his firm performed the following work which he considered reasonable and necessary: drafted a demand letter; filed and served a petition; obtained a title report; reviewed the divorce decree between Haas and his former wife to ascertain the status of title to the property; prepared a nonsuit of Mrs. Haas, who had also been sued; prepared a motion for default judgment when Haas failed to timely answer; reviewed the answer Haas eventually filed and later his amended answer; researched and briefed the jurisdictional issue after Haas filed a plea to the jurisdiction; propounded requests for disclosure, requests for admissions, interrogatories, and requests for production; reviewed Haas's answers to these discovery requests; obtained a trial setting; prepared a motion for summary judgment, reviewed Haas's response, and filed a reply; attended a pretrial conference; and prepared for trial.

As to the novelty and difficulty of the questions involved, Hamilton testified that it is highly unusual for a defendant to challenge jurisdiction in a suit to recover assessments. He also testified that it is unusual for an assessment case to proceed to trial when, as here, the defendant has admitted that the assessments, interest,

late charges, and reasonable attorney's fees are secured by a lien against the property. We also note that the legal issues concerning jurisdiction and section 209.008(a) raised in this matter were not routine because we have had to perform a somewhat extensive legal analysis with respect to those issues.

Finally, concerning the expertise, reputation, and ability of the attorney, Hamilton testified that his firm handles collection cases on a regular basis—"Many times each month. Dozens of times. Hundreds of times." Although this testimony is somewhat general, the trial court could have considered it as evidence of the expertise, reputation, and ability of the Association's attorneys. We conclude that the evidence is factually and legally sufficient to support the trial court's finding with respect to reasonable and necessary attorney's fees based on the factors outlined in section 5.006(b). We overrule Haas's fifth issue.

We affirm the judgment of the trial court.