Affirmed and Memorandum Opinion filed June 19, 2008








Affirmed and Memorandum Opinion filed June 19, 2008.

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-07-00138-CV

_______________

 

A. LAKHANY INTERNATIONAL, INC., Appellant

 

V.

 

 

JR UNITED INDUSTRIES, INC., Appellee

                                                                                                                                               


On Appeal from the 280th District Court

Harris County, Texas

Trial Court Cause No. 2004-62775

                                                                                                                                               


 

M E M O R A N D U M  O P I N I O N

In this
suit on a sworn account and for quantum meruit, appellant, A. Lakhany
International, Inc. (ALakhany@), challenges the trial court=s findings of fact and conclusions of
law supporting a take-nothing judgment in favor of appellee, JR United
Industries, Inc. (AJR@).  Because the dispositive issue is clearly settled in law,
we issue this memorandum opinion and affirm.  Tex. R. App. P. 47.4. 

 








I.  Factual and Procedural Background

Lakhany
sued JR on a sworn account and for quantum meruit for damages allegedly arising
from a transaction involving the alleged purchase of imported clothing
manufactured in the United Arab Emirates.  By verified answer, JR alleged,
among other matters, it was an improper party to the action because it did not
purchase any goods or services from Lakhany.  

Trial
was to the court, and two witnesses to the transaction testified:  Jaime
Grosfeld, secretary of JR and of another company, South American Textiles (ASouth American@); and Hashim Lakhany, President and
CEO of A. Lakhany International, Inc.[1] Both parties
also introduced documentary evidence.

According
to Grosfeld, South American is a registered importer which buys goods, then
resells them to JR, which, in turn, sells them to companies such as Kmart,
Wal-Mart, Penney=s, and Target.  Grosfeld handles all the orders and does so
through South American.[2]  South
American buys all goods and resells them to JR.








In May
2001, South American purchased men=s slacks and shorts from Ali Majeed,
one of the principals of Nisar Corporation in the United Arab Emirates. 
Grosfeld testified that he believed Nisar was the same company as Enrobe, whose
name was on the invoice.  The purchase in question involved a series of
deliveries.  After the first delivery, however, Kmart, who was to purchase the
goods from JR, Ajust went crazy@ because the garments were a Adisaster.@  South American rejected the
remaining deliveries.

Majeed,
however, kept calling, insisting the remaining goods were perfect, but Grosfeld
refused to do business with him.  Finally, Majeed, or a man Grosfeld believed
to be Majeed, told Grosfeld the goods were in the United States, and Grosfeld
was the person who could move them.[3]  Grosfeld
told Majeed he (Majeed) had to Amake good@ on the original shipment, and the two agreed on $150,000.

According
to Grosfeld, Majeed told him that, in order to obtain the $150,000, Majeed
wanted Grosfeld to take the goods that were in the United States because they
were made for Kmart and it would be difficult selling them to anyone else.  In
October 2001, Grosfeld agreed to take the goods, inspect them, and try to sell
them.  The first $150,000 would belong to Grosfeld, with the remaining amount
paid to Majeed.








Majeed
then said he had a friend in Texas who would take care of Abringing the goods in, paying the
duties, paying the demurrage charges, paying the G.O., paying all the expenses
and he will deliver them to me.@[4]  Grosfeld was to draft a purchase
order for Lakhany at the prices Majeed had given Grosfeld.  Grosfeld responded
that he needed to inspect the goods, and Majeed agreed.  Grosfeld issued the
purchase order on October 26, 2001 and sent it to Lakhany.  Lakhany then
informed Grosfeld he wanted Grosfeld to go to the G.O. warehouse to inspect the
goods.  Grosfeld refused, and Lakhany finally agreed Grosfeld could inspect
them in-house.  According to Grosfeld, A[T]hat was the condition that we
issued a purchase order at no charge meaning I am not responsible to pay
anything for these goods.@

The
goods were delivered to South American in April 2002.  Grosfeld inspected a
portion of the goods and found them to have the same defects as the initial
shipment.  After trying innumerable ways, Grosfeld was unable to sell the
goods.

Lakhany
testified A. Lakhany International is a manufacturer and importer of textiles. 
Enrobe had been one of Lakhany=s suppliers for fifteen years.  Lakhany=s agreement with a Mr. Nisar of
Enrobe was that Lakhany would move the goods from the general order customs
warehouse and find a buyer.[5]  Enrobe/Nisar
told Lakhany that JR was the buyer.

Lakhany
contacted JR and talked with Grosfeld.  According to Lakhany, Grosfeld agreed
to buy the goods and confirmed by means of the purchase order.  The purchase
order was sent by facsimile on October 26, 2001 and described a purchase from
Lakhany to be shipped to AS.A. United Industries.@  The purchase order specified
door-to-door shipping (ADTD@) and Ano charge.@  The cover sheet for the transmission, signed by Gilda
Castillo, contained JR=s name and address.  JR=s address on the cover sheet was the
same as S.A. United Industries=s address on the purchase order.

According
to Lakhany, Athey@ initially agreed to inspect the goods at the warehouse.  On November 23,
2001, however, Castillo, writing on JR letterhead, informed Lakhany:

Mr.
Grosfeld has advised me to inform you, that he is not interested in doing an
outside inspection, we do not have the time or personnel available to undertake
an outside inspection. And this was not what he had agreed to.








Please feel
free to dispose of the goods as you see fit.

 

Lakhany
continued asking when there was going to be an inspection, and Athey@ said they would not do an inspection
unless Lakhany sent a sample of the goods to them.  On May 9, 2002, Lakhany
sent one pair of shorts, as a sample of the goods, to Rozario Dass at JR.  In
mid-June 2002, Lakhany informed the three warehouses which were storing the
goods that Lakhany had sold the goods to JR, and JR would arrange for
transportation.  According to Lakhany, the goods were delivered to JR=s warehouse.

After
the goods were delivered, Lakhany had no further conversations with anyone at
JR.  Grosfeld also testified he did not inform Lakhany the goods were defective
or attempt to return them.  After a thirty-day inspection period, Lakhany
billed JR for the goods, and charges for duty, demurrage, and G.O. warehousing.

When he
was unable to collect the outstanding balance after several attempts, Lakhany
referred the account to a collection agency.  In response to correspondence
from the collection agency, Alan Walters, house counsel for South American,
informed the agency South American was the recipient of the goods and requested
all future correspondence be sent to South American.

At the
close of evidence, the trial court stated it found Lakhany=s position Avery confusing,@ and the court did Anot understand the transaction from
his point of view and [did] not think that he had an agreement with either J.R.
or C that other outfit.@  The court continued, AI just don=t believe Mr. Lakhany=s version . . . .@  Finally, the court stated, AI don=t think that he had the contract that
he thought he had or that he claims he had.@

The
court rendered judgment that Lakhany take nothing.  The court subsequently
filed findings of fact and conclusions of law.

 

 








II.  Standard of Review

In
fifteen issues, Lakhany challenges the legal and factual sufficiency of the
evidence to support various of the trial court=s findings of fact.[6] 
In his remaining twelve issues, he challenges various of the trial court=s conclusions of law.

Findings
of fact in a bench trial have the same force and dignity as a jury=s verdict on jury questions. Haas
v. Ashford Hollow Cmty. Improvement Ass=n, 209 S.W.3d 875, 887 (Tex. App.CHouston [14th Dist.] 2006, no pet.). 
We conduct a legal and factual sufficiency review of a trial court=s findings by the same standards we
apply when reviewing evidence supporting a jury=s answer. Id.  However, the
trial court=s findings are not conclusive when, as here, there is a complete reporter=s record.  Arrellano v. State Farm
Fire & Cas. Co., 191 S.W.3d 852, 856 (Tex. App.CHouston [14th
Dist.] 2006, no pet.).

If a
party attacks legal sufficiency of the evidence supporting an adverse finding
on an issue on which it did not have the burden of proof, the party must
demonstrate on appeal that no evidence supports the adverse finding.  Haas,
209 S.W.3d at 887.  If there is any evidence of probative force to support the
trial court=s findingCin other words, more than a mere scintillaCwe will overrule a challenge to legal
sufficiency of the evidence.  Mladenka v. Mladenka, 130 S.W.3d 397, 402
(Tex. App.CHouston [14th Dist.] 2004, no pet.).








When a
party attacks the factual sufficiency of the evidence supporting a finding, we
set aside the finding only if it is so contrary to the overwhelming weight and
preponderance of the evidence that it is clearly wrong and manifestly unjust.  Haas,
209 S.W.3d at 887.  The factfinder is the sole judge of the credibility of the
witnesses and the weight of the evidence.  City of Keller v. Wilson, 168
S.W.3d 802, 819 (Tex. 2005).  We may not substitute our judgment for the trier
of fact, even if we could reach a different answer on review of the evidence.  Daugherty
v. Am. Motorists Ins. Co., 974 S.W.2d 796, 797 (Tex. App.CHouston [14th Dist.] 1998, no pet.). 
The amount of evidence necessary to affirm a judgment is far less than that
necessary to reverse.  GTE Mobilnet of S. Tex. Ltd. P=ship v. Pascouet, 61 S.W.3d 599, 616
(Tex. App.CHouston [14th Dist.] 2001, pet. denied). 

We review conclusions of law de novo to determine whether they
are correct.  Mladenka, 130 S.W.3d at 402. On appeal, we will uphold
conclusions of law if we can sustain the judgment on any legal theory supported
by the evidence. Id. at 403.  Thus, incorrect conclusions of law do not require reversal if
the controlling findings of fact support the judgment under a correct legal
theory.  Id.

III.  Analysis

In his
second and thirteenth issues, Lakhany challenges legal and factual sufficiency
of the evidence to support the trial court=s finding JR Awas not the correct party, as it did
not send the purchase order that A. Lakhany, Inc. relied on in its belief that
it had an agreement.@  In his twenty-first issue, Lakhany challenges the trial
court=s conclusion that there was no valid,
enforceable contract between Lakhany and JR.  In his twenty-fifth issue,
Lakhany challenges the trial court=s conclusion that JR did not accept
any services or materials from Lakhany.

Lakhany
sued JR, not South American, on a sworn account and for quantum meruit.  JR
defended, in part, on the ground of defect of parties.








If the
evidence is legally and factually sufficient to support the trial court=s findings and conclusions that there
was no agreement between Lakhany and South American, both Lakhany=s theories of recovery fail, and his
remaining issues, directed primarily at findings and conclusions on the
elements of his causes of action, would be rendered moot.  Accordingly, we turn
first to Lakhany=s second, thirteenth, twenty-first, and twenty-fifth issues.

The
following evidence supports the trial court=s finding that JR was not the correct
party:

$                  
Grosfeld=s testimony that A[a]ll goods are brought [sic] by S.A.
Textile and resold to J.R. United@;

$                  
Grosfeld=s testimony that South American
originally purchased the goods from Majeed, who was an agent of Enrobe/Nisar;

$                  
Grosfeld=s testimony indicating that his
arrangement for the remaining goods with the man he believed was Majeed was
structured around Majeed=s Amak[ing] good@ on the original shipment, i.e., Grosfeld=s recouping $150,000 before paying
Majeed anything;

$                  
The purchase
order Grosfeld issued in October 2001 showing the shipment going to AS.A. United Industries@;

$                  
Delivery of the
goods to South American;

$                  
The letter from
South American=s house counsel to Lakhany=s collection agency in which house
counsel stated South American was the recipient of the goods and all further
correspondence should be directed to South American.

There is
more than a mere scintilla of evidence to support the trial court=s finding that JR Awas not the correct party, as it did
not send the purchase order that A. Lakhany, Inc. relied on in its belief that
it had an agreement.@  Accordingly, we conclude the evidence  is legally
sufficient to support this finding.  See Mladenka, 130 S.W.3d at
402.








To
support a contrary finding, Lakhany relies primarily on his own testimony and
on documents he sent to JR.  In addition, he refers to two pieces of
correspondence he received under JR=s letterhead: the facsimile
transmission sheet accompanying the October 26, 2001 purchase order and a
November 2001 letter on JR letterhead, in which Castillo informed Lakhany that
Grosfeld would not do an outside inspection of the goods.  Finally, Lakhany
points to the fact the purchase order shows AS.A. United Industries,@ rather than ASouth American Textiles,@ as the recipient and to the fact the
two entities have the same address.

It was
for the trial court, as fact finder, to assess the credibility of the witnesses
and the weight of the evidence.  See Wilson, 168 S.W.3d at 819.  The
trial court specifically stated it did not believe Lakhany=s version.

We
conclude the evidence is factually sufficient to support the trial court=s finding that JR was not the correct
party.  This finding supports the trial court=s conclusions (1) there was no valid,
enforceable contract between Lakhany and JR and (2) JR did not accept any
services or materials from Lakhany.  Put differently, the evidence  is legally
and factually sufficient to support JR=s defense of defect of parties in
relation to both of Lakhany=s claims.  Accordingly, we overrule Lakhany=s second, thirteenth, twenty-first,
and twenty-fifth issues, and do not address his remaining issues.  See
Tex. R. App. P. 47.1 (stating court is to hand down written opinion that is as
brief as practicable, but that addresses every issue raised and necessary to
final disposition of appeal).

IV.  Conclusion








Having concluded that the evidence is legally and
factually sufficient to support the trial court=s finding in favor of JR on its defect-of-parties defense, we overrule
Lakhany=s second, thirteenth, twenty-first, and twenty-fifth
issues. Because we hold the evidence is legally and factually sufficient to
support the trial court=s findings and conclusions that there was no agreement
between Lakhany and JR, both of Lakhany=s
theories of recovery are unavailing.  Therefore, Lakhaney=s remaining issues, directed primarily at findings and
conclusions on the elements of his causes of action, are rendered moot, and we
need not address them.  Accordingly, the judgment of the trial court is
affirmed.

 

 

 

 

/s/        Charles Seymore

Justice

 

Judgment rendered and Memorandum
Opinion filed June 19, 2008.

Panel consists of Justices Fowler,
Frost, and Seymore.









[1]  Unless necessary to distinguish between A. Lakhany
International, Inc. and Hashim Lakhany, we refer to both as ALakhany.@ 
The third witness was attorney William Peterson, who testified on the question
of Lakhany=s attorney fees.





[2]  In its first amended original petition, Lakhany
named South American as a defendant.  In its appellate brief, however, Lakhany
admits it subsequently non-suited South American and was not seeking damages
from South American at the time of trial.  The trial court=s judgment refers to JR as the sole defendant.  In its
findings of fact and conclusions of law, the trial court stated Lakhany dropped
its claims against South American in Lakhany=s
third amended petition.

 

Although JR has included Lakhany=s third amended original petition in the appendix to
its appellate brief, that petition is not part of the appellate record.  We
therefore consider only Lakhany=s appellate
admission, the final judgment, and the trial court=s findings of fact and conclusions of law in determining
the parties to the suit at the time of trial.  See Cherqui v. Westheimer St.
Festival Corp., 116 S.W.3d 337, 342 n.2 (Tex. App.CHouston [14th Dist.] 2003, no pet.) (A[I]n our review, we cannot consider documents attached
as appendices to briefs and must consider a case based upon the record filed.@).





[3]  As set forth below, Lakhany testified he spoke with
Grosfeld.   Grosfeld, however, testified that AJ.R. United does not do business with A. Lakhany,@ and  South American Anever had any deal with Mr. Lakhany at all.@  Grosfeld testified he did not know Lakhany and he
would not buy goods from people he does not know.  The person South American
dealt with regarding the goods in question was Majeed on behalf of
Enrobe/Nisar.





[4]  Lakhany testified AG.O.@ refers to general order of customs, a warehouse
containing goods not claimed by the importer.





[5]   Lakhany denied that he knew Majeed.





[6]  In his fifteenth issue, Lakhany argues, AIn so far as any of the Conclusions of Law are
considered Findings of Fact, there is no evidence or factually insufficient
evidence to support such Conclusions which may be determined to be Findings of
Fact.@  Lakhany, however, does not state to which
conclusions of law this issue may apply and presents no argument in support of
this issue.  See Tex. R. App. P. 38.1(h) (requiring appellant=s brief to contain clear and concise argument for
contentions made, with appropriate citations to authorities and the record); Sterling
v. Alexander, 99 S.W.3d 793, 799 (Tex. App.CHouston [14th Dist.] 2003, pet. denied).